**LEE LITIGATION GROUP, PLLC**
C.K. Lee, Esq. (BBO # 569242)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

---

ALI ZAMANI,
*on behalf of himself and all others similarly situated,*

        Plaintiff,

        v.

SHARKNINJA INC. and
SHARKNINJA OPERATING LLC,

        Defendants.

---

**Case No.**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## PRELIMINARY STATEMENT

1.      This case seeks redress for Plaintiff Ali Zamani ("Plaintiff" or "Plaintiff Zamani") individually for bodily injuries due to defective and negligent design of blenders on the part of Defendants SHARKNINJA INC. and SHARKNINJA OPERATING LLC ("SharkNinja" or "Defendants").

2.      Defendants designed unreasonably dangerous blenders. These blenders have a design defect whereby their blades do not lock into the bases of the blenders, allowing the blades to fall out. Plaintiff purchased the BL610 model and was injured when the blades in the blender fell onto his hands. Other blenders have the same design defect, including but are not limited to: BL665QBK, BL660, BL660WM.

3.    This Class Action Complaint also seeks redress for Plaintiff individually and on behalf of all others similarly situated for Defendants' unfair and deceptive trade practices, perpetuated against all consumers regardless of whether they were physically injured.

4.    Plaintiff seeks damages for all class members who purchased SharkNinja blenders with the aforementioned design defect (the "Products" or the "Product"). The design defects of the Product, which Defendants do not disclose on web pages where the Product is sold, lowers the value of the Product. Class members consequently paid for a Product that has less value than was represented to them.

5.    As a direct and proximate result of the Product's defective designs, Plaintiff suffered severe laceration, and members of the class have purchased a product that is worth less than they were led to believe through the marketing of the Product.

**PARTIES**

*Plaintiff*

6.    Plaintiff Ali Zamani is a resident and citizen of the County of New York in the State of New York, and has been at all relevant times.

7.    Plaintiff Zamani ordered a SharkNinja blender on Amazon and suffered severe lacerations because of the Product's unsecured stacked blade assembly.

8.    Plaintiff Zamani was deceived by Defendants' marketing on Amazon because he was not properly warned that the blades of the Product did not securely attach to the base of the blender and could fall out, resulting in injury to the user.

*Defendants*

9.     Defendant SHARKNINJA INC. is a citizen of Massachusetts that is headquartered at 89 A Street, Suite 100, in Needham, MA, 02494, USA. The address of their registered agent is 155 Federal Street Suite 700 in Boston, MA, 02110, USA.

10.     Defendant SHARKNINJA OPERATING LLC is a citizen of Massachusetts that is headquartered at 89 A Street, Suite 100, in Needham, MA, 02494, USA. The address of their registered agent is 155 Federal Street Suite 700 in Boston, MA, 02110, USA.

11.     SharkNinja designs, manufactures, markets, distributes, and sells a variety of consumer products, including the Products. Defendants operate as a single integrated enterprise and are jointly and severally liable to Plaintiff and the Class for the damages they suffered. Defendants are collectively responsible for the design, marketing, manufacturing, distribution, and sale of the Products.

## JURISDICTION & VENUE

12.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by the Class Action Fairness Act, 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendants, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

13.     This court has personal jurisdiction over Defendants because Defendants are headquartered in this state.

## FACTUAL AND LEGAL ALLEGATIONS

### THE NINJA BLENDER

14.    Defendants design, manufacture, market, distribute, and sell consumer products like the blender which injured Plaintiff.

15.    The Product consists of four main parts: an electric base, a main compartment called the blender jar where the contents of the smoothies and other liquids are placed, a lid, and a disconnected assembly of stacked and razor sharp blades.

16.    When the blender is assembled for use by a consumer, the blade assembly is fit into (*not* locked into) a protruding piece of plastic on the bottom of the blender jar. The blender jar then locks into the base, which contains the controls for the blender. The lid then locks onto the top of the blender, and the blade assembly locks into the lid. At no point in this process is the blade assembly secured to the main structure of the blender. The assembly is as follows:











17.    In most blenders, the blades are either connected to the rest of the blender, or they securely lock into some part of the main structure of the blender. When comparing blenders to food processors, The "Kitchen Aid®" website states, "Traditional blenders usually feature one blade at

the bottom of the jar that *cannot be switched out*. This blade can feature multiple points at various angles that help thoroughly blend ingredients"[1] [emphasis added].

18.     The website *doityourself.com* explains each part in a blender, including the description of blender blades below.

> The blender blade cutter is the stainless steel blade that does all of the crushing, stirring, pureeing and anything else your blender functions do. The blade itself is made out of stainless steel and though it looks complicated it really is not. Basically, you are looking at two pieces of metal that form a cross with each end bent at an angle. Each blade has an end which is angled up and the other side is angled down. When the blade rotates it pushes the ingredients upward from the bottom of the blender, grinding continually until the desired consistency is reached. *The blade is attached to the motor with a bolt or screw to ensure it stays in one place.* [emphasis added][2]

19.     Defendants' defective design requires that the lid be on to secure the blades. When the lid is off, the blades are not secure. Due to the Ninja blenders' method of securing the stacked blade assembly, its blades pose a threat of injury and laceration at any point that the lid is not secured to the blender.

20.     When a consumer uses the blender to create a thick substance, they need to remove the lid, the only part of the blender to which the stacked blade assembly is secured, to pour their drink.

21.     Once the lid is removed from the blender, the stacked blade assembly is no longer secured to the base of the Product. When the blender jar is tilted to pour, the sharp blades fall out and can cause injuries and lacerations.

---

[1] https://www.kitchenaid.com/pinch-of-help/countertop-appliances/difference-between-food-processor-and-blender.html
[2] https://www.doityourself.com/stry/a-complete-list-of-blender-parts

22.     Some people drink their smoothies directly from the blender jar. Therefore, a reasonable person could risk severe injury and laceration on their face or neck when using the Product.

23.     The poorly designed unsecured stacked blade assembly of the Ninja blender causes risk of injury and laceration when Defendants could easily remedy these issues by following the standard industry practice of properly securing a blender's blades in the blender.

24.     Defendants are aware that many consumers have already been injured and Defendant's disclosure warnings are insufficiently clear that the blade may fall out and cause injury.

## PLAINTIFF ZAMANI'S EXPERIENCES

25.     Plaintiff Zamani purchased a blender from SharkNinja on Amazon on or about March 10, 2024. The blender was delivered on March 12, 2024.

26.     On or about April 1, 2024, the unaltered blender caused injury and laceration on Plaintiff Zamani's hand. The unsecured stacked blade assembly fell out of the blender while he poured out his smoothie.

27.     After only three weeks of use, the condition of the blender was exactly as it was when delivered. Plaintiff Zamani did not materially alter the Product.

28.     The method used by Plaintiff to pour his smoothie was reasonable and should have been foreseen by Defendants.

29.     The cover of the blender jar must be removed for the pouring of thicker substances. Plaintiff Zamani removed the blender lid and poured his smoothie into a cup. As he tilted the blender jar so that his smoothie could be poured, the unsecure blades fell out and lacerated his hand. Plaintiff had to rush to the ER immediately.

30.    Two images of Plaintiff Zamani's injured hand are below:





31.    As a direct and proximate result of SharkNinja's negligent design of its Product and failure to redesign a defective Product such as this dangerous blender, Plaintiff has suffered serious bodily injuries, medical expenses, physical pain, mental anguish, diminished enjoyment of life, and other damages.

32.    Consequently, Plaintiff Zamani seeks damages for injuries resulting from the use of the blender as described above, which has caused Plaintiff to suffer from serious bodily injuries, medical expenses, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## **THE PRODUCT WAS DEFECTIVELY DESIGNED**

33.     The design of the Product is defective, as the dangerously sharp stacked blade assembly is only secured to the blender when the lid is locked into place. Without the lid to secure them, the blades are unsecured and may cause injury or laceration because they fall out of the blender while liquids are poured from the Product. Consequently, it is dangerous to pour liquid out of the blender due to the defective design of the Product.

34.      Defendants were aware of the dangers that its defective design posed and could have feasibly created a safer Product. There are many examples of other popular blenders with a safer design. The brand "Aeitto" is just one example. Their blender blades are permanently attached to the bottom of the blender, making it safe for a person to pour out their drink even if the lid is off.[3]

35.     Blenders created by "UneedMe" have the same secured blade feature.[4] "NutriBullet" has a slightly different blender style in their NBJ50200 model, but the blades in the blender are still secured in the main container of the blender and not at risk of falling out and causing injury and laceration.[5]

---

[3] https://www.amazon.com/Aeitto-Blenders-1500-Watt-Countertop-Professional/dp/B0CZNXJMVS/ref=cm_cr_arp_d_product_top?ie=UTF8&th=1
[4] https://www.amazon.com/CasaCosa-Professional-Countertop-Container-Commercial/dp/B08N4SC3MX/ref=sr_1_1_sspa?crid=2GEACOBQ7T594&dib=eyJ2IjoiMSJ9.xPpOoiy5tjTnfgo
mUUhQWuTPt_OcQJueHyE0P1dmFG4myAKBpPcryQ-
WMCmNDyGKqNshffy3xR2CBOTKdNGMl1AYxcefLXh20nT38Uz9zPuJVrAd-
bT3_0ZeUvC3VWKNg2Oz8PNNt6JJw4rYaWfdP20HsCVUZAf2D6JDyfWH9SUyec1o3rSBzm2ruCaUyMDwHAFb
HCVzwRohNza92SFTkPbVS2vhHXZFGi-
vUzE_q0c.fHPkKA4Uz24b86BOjPm3_ORarAW4OozM98QtMlaEcUI&dib_tag=se&keywords=removable+blade
+blender&qid=1719952484&sprefix=removeable+blade+blender%2Caps%2C71&sr=8-1-
spons&sp_csd=d2lkZ2V0TmFtZT1zcF9hdGY&psc=1
[5] https://www.bestbuy.com/site/nutribullet-centrifugal-juicer-pro-nbj50200-
silver/6422482.p?skuId=6422482

36.    "Hamilton Beach", "OMMO", and "sangcon" further uphold this industry standard.[6] For each of these blenders, there is no need to disclose that the blades are safe and secure, because that fact is an assumed industry standard.

37.    However, Defendants continued to sell the dangerous Product despite having actual knowledge of the risk of laceration and injury. The Consumer Products Safety Commission (or CPSC) has reported that Defendants have received at least 53 reports of lacerations caused by the stacked blade assembly falling out of the pitcher when consumers inverted or tipped the pitcher after removing the lid with the blade assembly still inside.[7]

---

[6] https://www.amazon.com/Hamilton-Beach-54221-Crusher-Multi-Function/dp/B0081PTLGU/ref=sr_1_3?crid=3HOJUHB4UOUSU&dib=eyJ2IjoiMSJ9.-kTET3E-fa-ivPkbc47BNzt6OUrCgf_OyRdolCs610YIbE-Maa3XZFBuMzv7GloQWkckETiObImIudUXwHTrwaOyHzRhpwboJhwGcqffhsjzHAq2qv9cVQlGu_k7Sd0vRRxWFF20An9KC3yfvqmjqWuk9M0zbqlcu7CmlI18NaHhNnMvfuxHcX3Uuc8yncsySppkrnBTSduDiL253PMPIp1nAnHbvYMd-dy4HBdCUAk._dexwgwi-wAp2FotJZdq9lybyXMj6cAEEm81loEX3lg&dib_tag=se&keywords=blender&qid=1719951694&sprefix=blender%2Caps%2C100&sr=8-3&th=1 ; https://www.amazon.com/OMMO-Professional-Countertop-Stainless-Dishwasher/dp/B0BFVFH5P5/ref=sxin_16_pa_sp_search_thematic_sspa?content-id=amzn1.sym.b0d633f3-9a20-49b3-a26c-f178eb14acbc%3Aamzn1.sym.b0d633f3-9a20-49b3-a26c-f178eb14acbc&crid=R6DCI5GRMO1N&cv_ct_cx=blender&dib=eyJ2IjoiMSJ9.odqVo4PxBA7JTLpJGhtZfWDz9Fb-VyfGmJX1kwZeAbkLoFuXueTPQd0umjYOrtHjmh_8CtYy4nU12iDNmucQcg.OaNXrGwNgRJTrEVoX185kMMAtTqWA1GhNTNQpt3dJ0A&dib_tag=se&keywords=blender&pd_rd_i=B0BFVFH5P5&pd_rd_r=3ec84e38-def7-4911-a604-e672c85e22c1&pd_rd_w=L4KJy&pf_rd_p=b0d633f3-9a20-49b3-a26c-f178eb14acbc&pf_rd_r=FHDVE3T44A0C3WSG3BTM&qid=1719951748&sbo=RZvfv%2F%2FHxDF%2BO5021pAnSA%3D%3D&sprefix=blender%2Caps%2C78&sr=1-4-9428117c-b940-4daa-97e9-ad363ada7940-spons&sp_csd=d2lkZ2V0TmFtZT1zcF9zZWFyY2hfdGhlbWF0aWM&th=1 ; https://www.amazon.com/Blenders-Processor-Smoothies-Grinding-Stainless/dp/B0CBJH8H7C/ref=sxin_25_sbv_search_btf?content-id=amzn1.sym.5cde1a09-4942-4242-87c5-e66d2d3b6a3c%3Aamzn1.sym.5cde1a09-4942-4242-87c5-e66d2d3b6a3c&crid=3SDU9I6N1MB5Y&cv_ct_cx=blender&dib=eyJ2IjoiMSJ9.6ToBNCnZ-VSa9Yeyyl-D1A.tGkGXaBLzQS9bvSQ1u47A0MNgXYh8s3yibc8KDYIADg&dib_tag=se&keywords=blender&pd_rd_i=B0CBJH8H7C&pd_rd_r=6b9515ea-38a8-4187-a133-3faa5ae016d0&pd_rd_w=cYCNI&pd_rd_wg=maaHk&pf_rd_p=5cde1a09-4942-4242-87c5-e66d2d3b6a3c&pf_rd_r=6WNHEP270M2S2HR47YCW&qid=1719951875&sbo=RZvfv%2F%2FHxDF%2BO5021pAnSA%3D%3D&sprefix=blender%2Caps%2C76&sr=1-1-5190daf0-67e3-427c-bea6-c72c1df98776&th=1
[7] https://www.cpsc.gov/Recalls/2016/Laceration-Injuries-Prompt-SharkNinja-to-Recall-Ninja-BL660-Blenders

38.    Following these complaints, Defendants recalled twelve models of the Product. The recall date was November 12, 2015.[8] This recall did not result in a change in the design defect, and customers have continued to complain that the Product is unreasonably dangerous.

39.    The product has received a multitude of complaints post-recall about the safety of the BL610 blender on the Amazon page where Plaintiff Zamani purchased his Product. Below is a sampling of reviews from the aforementioned Amazon page[9]:

**Big, Dumb Blender** *[June 2015 review]*
After using the blender for over a week now, I can't help but not write a review and wonder about the design meeting…
… Creative: "But with the three blades, you really can't fit too much in the blender to begin with, so people are going to have to stop the blender to put things in, like 4 or 5 times each time..."
… Creative: "O.K. What about the 3 blades. There's nothing to keep them in the blender, so when you pour, you have to be careful of the blades will pop out into the glass you're pouring in and make a mess."

**CAUTION! Dangerous item** *[June 2019 review]*
…What they've failed to do, however, is to lock the blade tree in place in any way whatsoever. I have injured myself TWICE now using this blender. The first time, I was rinsing the jar and the blade tree fell out into the sink. Being absent minded, I instinctively grabbed for it, cutting my thumb VERY DEEPLY on one of the blades. The second time, was just now. I was pouring the last of the shake that I had made into a glass and the blade tree fell out again and landed on my hand. Fortunately, this time, the cut was more superficial, but it's still bleeding somewhat…you might want to look for a less dangerous blender to use.

**piece of junk** *[July 2019 review]*
I bought this blender because of quality of the Ninja brand. Was I in for a disappointment. The thing is a piece of junk. It doesn't blend well. And it's very dangerous when trying to pour or clean. The blades are not at the bottom, but throughout the blender. When you try to pour a smoothie, the blades can fall out. This also happens when trying to wash it. It is poorly designed…

---

[8] https://www.cpsc.gov/Recalls/2016/Laceration-Injuries-Prompt-SharkNinja-to-Recall-Ninja-BL660-Blenders
[9] https://www.amazon.com/product-reviews/B00NGV4506/ref=cm_cr_getr_d_paging_btm_next_7?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews&pageNumber=7#reviews-filter-bar

**SAFETY FEATURE** *[September 2020 review]*
The blender worked great and is powerful but it has a HUGE SAFETY FEATURE. I just purchased this in June and I haven't had it more than a couple months before it broke. The blender isn't supposed to turn on unless the lid is completely locked. The lid and blender are defective. When I put the lid on (it wasn't secured tightly) the blender still turned on. The Blade ended up drilling a hole in another part of the lid where it wasn't locked in and plastic chunks went into my drink. This could have been ingested and thankfully I caught it before hand. I am lucky the blade didn't fly out of the Ninja while turned on because it wasn't locked into the piece in place. (Where the blade and lid are supposed to lock is made poorly). When I called to have the blender or lid replaced, and explained the safety problem...the company was non apologetic…

**Between the cheap weak plastic, the razor sharp blades, and it sprays water out the side** *[May 2024 review]*
… On top of this I checked the blades and at first they appeared to be just sharper than a normal blender but while cleaning it I was fortunate to personally find out it's actually razor sharp towards the inner part. It comes out too meaning every time you clean it you have a rolling thing of razor sharp blades with no where to grab if it starts to roll off your counter. I wonder how many toes I'll lose and how many scars I'll get on my hand before I throw this pos out…

**a lawsuit waiting to happen** *[May 2024 review]*
seriously cut myself when trying to remove the blades to clean blender.

40.    As shown above, many customers complained that the blades were dangerously sharp and liable to fall out and cut an individual using the Product. The blades did not lock into the blender anywhere except at the lid and many customers beyond Plaintiff have noticed the safety hazard.

41.    Clearly, an unreasonable level of caution needs to be exercised during the use of the Product, and multiple people have experienced laceration and injury due to the Product's design defect.

42.    Defendants failed to adequately alter their Product after multiple complaints and have continued to sell a Product that is dangerously designed, showing prioritization of profit over safety through their negligent addition of the blender into the stream of commerce.

## WARNINGS WERE INADEQUATE

43.    None of the warnings of the Product's defective design are prominent, emphasized, nor are the warnings clear in their instructions.

44.    Below are images of the warning that Defendants offer about their defectively designed Product from two angles:





45.     These warnings are written in fine print, not visible from a reasonable angle (the warnings are only readable if an individual has a bird's-eye view of the blender), and vague. A reasonable customer would struggle to read the warnings, but even a customer who could read the warnings may reasonably remain uninformed of the injuries and lacerations that the Product could cause.

46.    The first three sentences of the warning say, "Loose sharp blades. Do not open until blades stop. Keep lid locked when pouring or carefully remove Stacked Blade Assembly before pouring without lid." This warning fails to explicitly tell the user that these guidelines must be followed or else the blades will fall out of the blender and possibly cause injury. They did mention that there were "loose sharp blades", but the phrasing is vague and the following sentence implies that this is important only because they could injure a user if they open the lid before the blades stop.

47.    The reality is that there are unsecured sharp blades that could fall out and cause injury to a consumer if they take the lid off of jar before pouring their drink. This information should be prominently and clearly stated. Instead, the warning that the blades will fall out during reasonably foreseeable use of the blender is buried by warnings that any blender would have.

48.    All other warnings that Defendants offer are similarly inadequate. The Amazon webpage where Plaintiff purchased the Product contains three PDF links, titled "Safety Information," "User Guide" and "User Manual."[10] However, these documents are tucked away inconspicuously at the very bottom of the page, right above consumer video reviews, such that a reasonable consumer is unlikely to even notice them. *See* **Exhibit A**. While the "User Guide" and "User Manual" do contain some safety information, see **Exhibit B**, the only document whose title might conceivably call the consumer's attention to safety concerns ("Safety Information") addresses only product maintenance and not the risk of physical injury:

---

[10] https://www.amazon.com/Ninja-Professional-Countertop-Technology-BL610/dp/B00NGV4506/ref=sr_1_3?crid=MKHWPAUV9WBO&dib=eyJ2IjoiMSJ9.bEhYInVG_FBZA3yFvRkfCGK4z_6M_SxMuktBQ43a-ObdFXG_FQ8OplL-gQR-jkt1fQhS6AVAzE6cUda8pO9e2AWHwpvEmHN3NDfNP86u-sihbqn09_PmiJ5ZlQuK5xyFDomxpfOGw3SLHbJnDarH8E6vE1Fpeo_VAwuBGPC5gp4IaSXiH8a6-NvqA6DEETzWfbxXpRcTu3iV9Ewh1B2KsbERWwBqiAOwy4fdaK8CuqU.-UFGTe8wOLsxiSaQDUbIIzoxU7Qxnqa6MAq-6MIREeg&dib_tag=se&keywords=ninja%2Bbl610&qid=1720707783&sprefix=ninja%2Bbl610%2Caps%2C86&sr=8-3&th=1

## Product care & maintenance

Can I make hot soup in the Ninja Professional Blender?

No, the Ninja Professional Blender is not made for use with hot liquids or ingredients.

Are there dishwasher-safe parts?

Yes, the 72oz pitcher, lid, and blade assembly is dishwasher-safe. It is recommended to put the lid and blade assembly on the top rack.

Are there microwave-safe parts?

No, there are no microwave-safe parts

49.     Though this PDF is said to contain safety information, it makes no mention of the defective design of the Product. This so-called safety information document fails to warn that the unsecured stacked blade assembly will fall out if a user tilts the jar, risking injuries and lacerations.

50.     A reasonable person would expect all safety information to be disclosed on the PDF that is advertised to include safety information. The lack of disclosure about the design defect would lead a reasonable person to believe that the blades will not fall out and cause injury or lacerations.

51.     Most people know how to use a blender, so someone who is worried about their safety would not read the user manual but the safety information. A reasonable person would trust that the safety information provided is all the safety information that they need to know.

52.     Mentions of the unsecured blades are not emphasized in the user manual: they are embedded within other information and written in small font. A reasonable customer would not understand the dangers of the Product's defective design after reading the user manual.

53.     In the user guide, the Product's user is never actually informed that the blades will fall out of the blender while they pour a smoothie.

54.     The warnings are not prominent. Warnings of the defective design are hidden between warnings much more typical of a standard blender. For example, the page titled "IMPORTANT SAFETY INSTRUCTIONS" places more emphasis on the danger of using extension cords than the dangers posed by the Product's defective design. There is no warning that directly states that the blades can fall out of the product during reasonable and foreseeable use of the Product. A reasonable consumer may not read the entire user manual, but even reading the entire page of warnings would not make a customer prepared for the level of danger posed by the unsecured nature of the blade assembly.

55.     The instructions of how a user should handle the product to avoid injury and laceration are also contradictory. The consumer is instructed to pour their smoothies with the lid locked into place, then they are told that they must remove the lid if the substance in the blender is thick. Defendants say that the blade assembly should be removed before pouring with the lid off, but they also tell the Product's user not to place their hands inside the jar of the blender due to the sharp blades, and instead to use a spatula to remove items that are difficult to pour.

56.     Regardless of the quality of the warnings within the user guide, the warnings are inadequate. Most people know how to use a blender, so someone who is worried about their safety would not read the user guide but the safety information. A reasonable person would trust that the safety information provided is all the safety information that they need to know.

57.     Ultimately, even if Defendants did give adequate warning, which they did not, it would not change that their product is defectively designed and unreasonably dangerous. The Product is unreasonably designed. Whatever warnings are given, the Product contains blades that

will fall out and possibly cause serious injury or laceration during reasonable and foreseeable use of the Product. No warning would change this fact.

58.     Warnings do not automatically absolve Defendants of responsibility for the dangers that are posed by their defective designs. To use a famous historical example, if Ford had given each Pinto owner a user manual that happened to inform the Pinto owner that the car might explode during a reasonably foreseeable event, that would not change the fact that the car had a dangerous design defect.[11]

59.     Defendants warn that their design is defective, but they nonetheless continue to place the defective Product in the stream of commerce, though it has led to many injuries and lacerations. With or without warnings, the unsecured nature of the blade assembly is dangerous. Reasonable safer blender designs are available. It would be easy to redesign the Product so that the blades will not fall out of the blender during reasonably foreseeable use of the Product.

## CONSUMER FRAUD AGAINST PLAINTIFF ZAMANI AND CLASS

60.     Plaintiff Zamani, along with the Class, are victims of deceptive marketing that has led to their purchase of a Product with less value than they were led to believe.

61.     Though Defendants are clearly aware of the flaws of the Product, they fail to adequately inform consumers of this fact.

62.     A blender with unsecured blades is less valuable than one with secured blades, both because of the physical risk of injury and because consumers need to worry about injury.

---

[11] https://www.riscassi-davis.com/blog/2018/november/what-the-ford-pinto-case-can-teach-us-almost-50-/; https://www.tortmuseum.org/ford-pinto/

63.     On the Amazon page from which Plaintiff purchased the Product, it is not mentioned anywhere that the stacked blade assembly is not secured to the main structure of the Product. Nothing that a reasonable consumer would see discloses the design defect.

64.     The only available disclosure on the web page is in PDF form. A reasonable customer would not download three user manual PDFs and scour over sixty pages worth of instructions to make sure that the product they are purchasing does not have undisclosed design defects. **Exhibit A** displays the inaccessible nature of the design defect disclosures.

65.     The PDF links are inconspicuous and at the very bottom of the web page. A reasonable customer may not see the links, or they may see them but not realize that the links are connected to the Product. The PDF links contain information that should be at the very top of the web page. Defendants should have warned of the defective design in the description of the Product. Instead, Defendants placed these warnings in a location that an average customer would not expect or see. A reasonable customer would likely purchase the Product without ever even seeing that there are any PDFs attached, let alone downloading and reading them.

66.     A reasonable consumer would expect the blades to be secure, given that this is technologically feasible and the normal practice of most blender manufacturers.

67.     A reasonable consumer would take the information presented on the main sale page at face value. Therefore, many people would reasonably purchase the blender without ever seeing any information regarding the way that the blades attach to the blender until after they have purchased the Product.

68.     This means that Plaintiff Zamani and other consumers reasonably expected that there was not a design defect in the Product that they were purchasing when, in fact, there was.

## CLASS ACTION ALLEGATIONS

69.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons or entities who purchased the Products in the United States during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the Class")

70.    Plaintiff brings his own consumer fraud claims and those of the Class under (a) the Massachusetts Consumer Protection Law and (b) common law fraud.

71.    Should the Massachusetts Consumer Protection Law be inapplicable to the claims of Plaintiff and other out-of-state Class members, Plaintiff alternatively brings his claims under NY GBL § 349 (New York Deceptive Trade Practices Act) and NY GBL § 350 (New York False Advertising Law) and brings the claims of Class members under the consumer protection laws of each state (including the District of Columbia) in which any Class member resides. These statutes include:

a.    Alabama Deceptive Trade Practices Act, Ala. Statues Ann. § 8-19-1, *et seq.*; Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.*;

b.    Arizona Consumer Fraud Act, Arizona Revised Statutes, § 44-1521, *et seq.*;

c.    Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;

d.    California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq., and* California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;

e.    Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

f.    Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;

g.    Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;

h.    District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901, *et seq.*;

i.    Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

j.    Georgia Fair Business Practices Act, § 10-1-390 *et seq.*;

k.  Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480-1, *et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.;*

l.  Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*

m. Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.;*

n.  Indiana Deceptive Consumer Sales Act, Indiana Code Ann. § 24-5-0.5-0.1, *et seq.;*

o.  Iowa Consumer Fraud Act, Iowa Code § 714.16, *et seq.;*

p.  Kansas Consumer Protection Act, Kan. Stat. Ann § 50 626, *et seq.;*

q.  Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et seq.;*

r.  Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § 51:1401, *et seq.;*

s.  Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.;*

t.  Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.;*

u.  Massachusetts Consumer Protection Law, Mass. Gen. Laws ch. 93A;

v.  Michigan Consumer Protection Act, § 445.901, *et seq.;*

w. Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et seq.,* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*

x.  Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.;*

y.  Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*

z.  Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et seq.;*

aa. Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*

bb. Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.;*

cc. New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.;*

dd. New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.;*

ee. New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.;*

ff. New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.,* and New York False Advertising Law, N.Y. Gen. Bus. Law § 350, *et seq.;*

gg. North Dakota Consumer Fraud Act, N.D. Cent. Code § 51-15-01, *et seq.;*

hh. North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes § 75-1, *et seq.;*

ii. Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. § 4165.01, *et seq.;*

jj. Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*

kk. Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.;*

ll. Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § 201-1, *et seq.;*

*mm.*    Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

*nn.* South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

*oo.* South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws § 37-24-1, *et seq.*;

*pp.* Tennessee Trade Practices Act, Tennessee Code Annotated § 47-25-101, *et seq.*;

*qq.* Texas Stat. Ann. § 17.41, *et seq., *Texas Deceptive Trade Practices Act, *et seq.*;

*rr.* Utah Unfair Practices Act, Utah Code Ann. § 13-5-1, *et seq.*;

*ss.* Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.*;

*tt.* Virginia Consumer Protection Act, Virginia Code Ann. § 59.1-196, *et seq.*;

*uu.* Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.*;

*vv.* West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

*ww.*    Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*;

*xx.* Wyoming Consumer Protection Act, Wyoming Stat. Ann. § 40-12-101, *et seq.*

72.    Should the Court not certify a Nationwide Class, Plaintiff, in the alternative, seeks to represent a state-wide class.

73.    The proposed Class excludes current and former officers and directors of Defendants, members of the immediate families of the officers and directors of Defendants, Defendants' legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

74.    Plaintiff reserves the right to revise Class definitions based on facts learned in the course of litigating this matter.

75.    Class members are so numerous that the joinder of all members is impracticable. While the exact number of is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, there are clearly thousands, if not tens or hundreds of thousands, of Class Members, given the scale of Defendants' operations. Other Class members may be notified of the pendency of this action by mail or by advertisement, using the forms of notice customarily used in class actions such as this.

76.     Plaintiff's claims are typical of the claims of other Class members, as all Class members are similarly affected by Defendants' wrongful conduct.

77.     Plaintiff will fairly and adequately protect the interests of Class members in that Plaintiff has no interests antagonistic to those of other Class members. Plaintiff has retained experienced and competent counsel.

78.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for them to individually seek redress for the wrongful conduct alleged herein.

79.     Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members. Questions of law and fact common to all Class members include:

> i.   Whether Defendants made misrepresentations and/or deceptive omissions concerning the safety of the Product;
>
> ii.  Whether Defendants' marketing, promotion and advertising of the Product is false, fraudulent, deceptive, unlawful or misleading;
>
> iii. Whether Plaintiff and members of the Class sustained injuries or damages as a result of Defendants' false advertising of the Product;
>
> iv.  Whether Plaintiff and Class members are entitled to equitable relief and prospective injunctive relief enjoining Defendants from continuing to engage in the fraudulent, deceitful, unlawful and unfair common scheme as alleged in this Complaint;

v.  Whether Defendants' conduct rises to the level of reprehensibility under applicable law such that the imposition of punitive damages is necessary and appropriate to fulfill the societal interest in punishment and deterrence, and the amount of such damages and/or their ratio to the actual or potential harm to Class members.

80.     The prosecution of this action as a Class action will reduce the possibility of repetitious litigation. Plaintiff knows of no difficulty which will be encountered in the management of this litigation that would preclude its maintenance as a class action.

81.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

82.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

83.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

84. The prosecution of separate actions by Class members would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendants.

85. Defendants' conduct us generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole. Accordingly, Defendants' systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

## COUNT I

## DEFECTIVE DESIGN OF PRODUCTS— STRICT LIABILITY

86. Plaintiff Zamani incorporates by reference each preceding paragraph as though set forth fully at length herein.

87. "To establish a prima facie case in a strict products liability action predicated on a design defect, a plaintiff must show that the manufacturer marketed a product which was not reasonably safe in its design, that it was feasible to design the product in a safer manner, and that the defective design was a substantial factor in causing the plaintiff's injury." *Pierre-Louis v. DeLonghi Am., Inc.,* 66 A.D.3d 859, 860, 887 (App. Div., Second Dept., 2009)

88. Defendants designed blenders in a manner that was unreasonably and unnecessarily dangerous for use by foreseeable consumers, including Plaintiff Zamani.

89. Plaintiff Zamani was using one of these blenders in the same or a substantially similar condition as when they left the possession of Defendants.

90. Plaintiff did not misuse or materially alter the Ninja blender.

91. The Ninja blender did not perform as safely as an ordinary and reasonable person would expect it to perform when used in a reasonable and foreseeable manner.

92.    Further, a reasonable person would conclude that the possibility of serious harm outweighs the burden or cost of making the Ninja blenders safe.

93.    The Ninja blenders designed, manufactured, sold, and supplied by Defendants were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers.

94.    The seriousness of the potential laceration and injuries resulting from the Product drastically outweighs any benefit that could be derived from the Product's present design, where the blades are needlessly unsecured to the rest of the blender.

95.    Defendants failed to properly market, design, manufacture, distribute, supply, and sell the Ninja blenders, despite having extensive knowledge that the aforementioned injuries could and did occur.

96.    Defendants failed to adequately warn about the safety of the Ninja blenders.

97.    Defendants failed to market an economically and otherwise feasible alternative design, despite the existence of the aforementioned safer alternatives, that could have prevented Plaintiff's injuries and damages.

98.    Defendants' actions and omissions were the direct and proximate cause of Plaintiff's injuries.

99.    Plaintiff Zamani demands judgement against Defendants for damages, together with interest, costs of suit, and such other relief as the Court deems proper.

## COUNT II

## DEFECTIVE DESIGN OF PRODUCTS-- NEGLIGENCE

100.    Plaintiff Zamani incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

101.   "[When] negligence claims are premised on a product's defective design, it must be established that the marketed product in question was designed in such a way that it is not reasonably safe and that the alleged design defect was a substantial factor in causing the decedent's injuries… A cause of action for negligent design additionally requires proof that the manufacturer acted unreasonably in designing the product." *Blandin v. Marathon Equip. Co*., 9 A.D.3d 574, 576, 780 N.Y.S.2d 190, 192-93 (App. Div. 2004). [Citations and quotations omitted].

102.   Defendants should have known of the dangers posed by the Product because they had already recalled the Product once (without altering the defective design) and had received all the aforementioned reviews and more that made it clear that the blender was injuring people.

103.   As a result, the subject Ninja blenders, including Plaintiff Zamani's Ninja blender, contain defects in their design which render them unreasonably dangerous to consumers, such as Plaintiff Zamani, when used as intended or reasonably foreseeable by SharkNinja. This design defect, specifically the lack of security for the stacked blade assembly in the blender, causes unreasonable increased risk of injury.

104.    Plaintiff Zamani used his Ninja blender in a reasonably foreseeable manner and did so as substantially intended by Defendants.

105.   The subject Ninja blender was not materially altered or modified after being manufactured by SharkNinja and before being used by Plaintiff Zamani.

106.   The Ninja blenders contain unsecured and extremely sharp blades that can, and have, resulted in injury and laceration.

107.   Most blenders' blades are either connected to the bottom of the blender or easily lock into the bottom of the blender so that they are secure and do not pose a risk of falling out onto a consumer when they pour their drink.

108.    Plaintiff Zamani was injured because the unsecured stacked blade assembly fell out of the blender and onto his hand during a reasonably foreseeable use of the Product, causing injury and laceration.

109.    As a direct and proximate result of SharkNinja's negligent design of its Ninja blenders, Plaintiff in this case suffered injuries and damages described herein.

110.    Plaintiff Zamani demands judgement against SharkNinja for damages, together with interest, costs of suit, and all such other relief as the court deems proper.

<u>**COUNT III**</u>

**VIOLATION OF MASSACHUSETTS CONSUMER PROTECTION LAW**

**(Brought by Plaintiff on behalf of himself and the Class)**

111.    Plaintiff Zamani incorporates by reference each preceding and paragraph as though set forth fully at length herein.

112.    Plaintiff purchased the Product on March 10, 2024. Claims under the Massachusetts Consumer Protection Law are subject to a four-year statute of limitations. M.G.L. ch. 260, § 5A. Plaintiff is therefore within the statute of limitations.

113.    "940 C.M.R. 3.16(2) states that an act or practice is a violation of G.L.c. 93A, 2 if: 'Any person or other legal entity subject to this act fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction.' *Commonwealth v. Amcan Enters.*, 5 Mass. L. Rep. 53 (1996).

114.    "[A] deceptive act or practice is one that has the capacity to deceive. An act or practice is deceptive if it could reasonably cause a person to act differently from the way he would act if he knew the truth about the matters. This would include any communication made with the intent to deceive another person. Even a negligent or careless misrepresentation of fact, the truth

of which was reasonably capable of ascertainment, may also be a deceptive act or practice." *Int'l Vacation Sales, Inc. v. Dugas*, No. 02-698, at *1 (2004, Mass. Super)

115.    The Massachusetts Consumer Protection Law states that "deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Mass. Gen. Laws ch. 93A §2(a). SharkNinja violated this policy on their Amazon storefront and other marketing, where they fail to mention the Product's dangerous design defects. This means that a reasonable consumer may purchase the Product without knowledge of its defective design.

116.    Defendants engaged in trade or commerce as they sold the Product to Plaintiff and the class. Their conduct was deceptive and unfair as they did not disclose relevant design defects in their Product before sale to consumers.

117.    Defendants knew or should have known of the dangers posed by their Product because they had received at least 53 reports of injury and laceration from consumers. Yet, even though Defendants knew that they were selling a dangerous Product, they did not market it as such.

118.    On the Amazon page where Plaintiff Zamani purchased his blender, there was no indication that the blades did not securely lock into the bottom of the blender, as is usually the case with blenders. Any reasonable customer would therefore assume, based on Defendants' lack of disclosure, that they were purchasing a safer Product than they were.

119.    The unsafe nature of the defective design of the Product lowers its value because consumers may receive injury from the Product. Furthermore, consumers will need to worry about the possibility of injury and laceration every time they use the Product sold by Defendants.

120.    "General Laws c. 93A, § 11, sixth par., authorizes the award of attorney's fees 'incurred in connection with said action' (i.e., the G. L. c. 93A action), but not for other actions." *Drywall Sys., Inc. v. ZVI Constr. Co.*, 435 Mass. 664, 673, 761 N.E.2d 482 (2002). "The entire

tenor of G. L. c. 93A is to award attorney's fees and costs to a party who succeeds in demonstrating that a defendant has violated G. L. c. 93A, § 2(a)." *Barron v. Fidelity Magellan Fund*, 57 Mass. App. Ct. 507, 517, 784 N.E.2d 634 (2003) (quoting *Commonwealth v. Fall River Motor Sales*, Inc., 409 Mass. 302, 316, 565 N.E.2d 1205 (1991).

121.    "[S]ingle recovery shall be 'the amount of actual damages,' meaning the (foreseeable) loss to the claimant caused by the violation, this amount to be doubled or tripled where the violation was in bad faith." *Yeagle v. Aetna Cas. & Sur. Co.*, 42 Mass. App. Ct. 650, 653, 679 N.E.2d 248, 250 (1997). Defendants marketed the Product in bad faith, as they were aware of both the design defect and that this was not being disclosed to consumers.

122.    Accordingly, Plaintiff Zamani and the Class demand judgment against SharkNinja for damages, together with interests, costs of suit, and such other relief as the Court deems proper.

## COUNT IV

### VIOLATIONS NEW YORK DECPETIVE TRADE PRATICES ACT

### (N.Y. GBL § 349)

**(brought in the alternative by Plaintiff on behalf of himself and New York Class members, alongside the consumer protection laws of each state in which a Class member resides)**

123.    Plaintiff realleges and incorporates by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

124.    NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

125.    Under the NY GBL § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 . . . claims, it was error. Justifiable reliance by the plaintiffs is not an element of the

statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

126.    Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in their own name to enjoin such unlawful act or practice, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The Court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds Defendants willfully or knowingly violated this section. The Court may award reasonable attorney's fees to a prevailing plaintiff. NY GBL § 349(h)

127.    The practices employed by Defendants, whereby they advertise, promote, and market the Product is unfair, deceptive, misleading, and in violation of NY GBL § 349.

128.    The foregoing deceptive acts and practices were directed at consumers.

129.    Plaintiff, on behalf of himself and all others similarly situated, respectfully demands a judgment enjoining Defendants' conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this Court deems just and proper.

## COUNT V

### VIOLATIONS OF NEW YORK FALSE ADVERTISING LAW
### (N.Y. GBL § 350)
### (brought in the alternative by Plaintiff on behalf of himself and New York Class members, alongside the consumer protection laws of each state in which a Class member resides)

130.    Plaintiff realleges and incorporates by reference the allegations contained in all preceding paragraphs and further alleges as follows:

131.    Defendants have been and/or are engaged in the "conduct of … business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

132.    New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …" N.Y. Gen. Bus. Law § 350-a(1).

133.    Defendants caused to be made or disseminated throughout New York, through advertising, marketing and other publications, statements that were untrue or misleading, and that were known to Defendants, to be untrue and misleading to consumers and the Class.

134.    Defendants' deceptive representations and failures to disclose as alleged herein were material and substantially uniform in content, presentation, and impact upon consumers at large.

135.    Defendant has violated N.Y. Gen. Bus. Law § 350 because its false and deceptive health claims were material and likely to deceive a reasonable consumer.

136.    Plaintiff and Class have suffered an injury, including the loss of money, as a result of Defendant's false and misleading advertising.

137.    Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiff and Class members seek monetary damages (including actual damages and minimum, punitive, or treble and/or statutory damages pursuant to GBL § 350-a (1)), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

## COUNT VI

### COMMON LAW FRAUD

*(brought by Plaintiff on behalf of himself and the Class)*

138.    Plaintiff realleges and incorporate herein by reference the allegations contained in all preceding paragraphs and further alleges as follows:

139.    Defendants intentionally made materially deceptive omissions regarding the Product's safety and design by not disclosing the Product's design defect to Plaintiff and other consumers.

140.    Defendants had a duty to disclose such because a reasonable consumer would not expect such a defect and because Defendants had superior knowledge of the defect that the ordinary purchaser of the Product lacks.

141.    Plaintiff and Class members reasonably relied on Defendants' misleading omissions. They did not know, and had no reason to know, that the Product is defectively designed and worth less than a blender that is properly designed.

142.    Defendants knew and intended that Plaintiff and the Class members would rely on their deceptive omissions.

143.    Plaintiff and Class members have been injured as a result of Defendants' fraudulent conduct.

144.    Defendants are liable to Plaintiff and Class members for damages sustained as a result of Defendants' fraud.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Zamani demands judgement against SharkNinja for damages, including exemplary damages if applicable, to which he is entitled by law, as well as all costs of this action, including interest and attorneys' fees, to the full extent of the law, whether arising under the common law and/or statutory law, including:

      a.    Certification of the Class and appointment of Plaintiff's Counsel as Class Counsel;

b.  Judgement for Plaintiff Zamani against SharkNinja for Plaintiff's physical injuries, including emotional distress damages ;

c.  Damages to compensate Plaintiff and Class members for economic losses resulting from Defendants' fraudulent business practices, including all applicable punitive damages;

d.  Pre and post-judgement interest at the lawful rate;

e.  A trial by jury on all issues of the case;

f.  An award of attorneys' fees; and

g.  For any other relief as this Court may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a jury trial on all claims so triable.

Dated: September 9, 2024                              Respectfully submitted,

                                                             **LEE LITIGATION GROUP, PLLC**
                                             By:     */s/ C.K. Lee*
                                                             C.K. Lee (BBO # 569242)
                                                             148 W 24 Street, Eighth Floor
                                                             New York, NY 10011
                                                             Telephone: (212) 465-1188
                                                             Facsimile: (212) 465-1181
                                                             *Attorneys for Plaintiff and the Class*