# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

ALI ZAMANI,
on behalf of himself and all others similarly
situated,

               Plaintiff,

       v.

SHARKNINJA, INC. and
SHARKNINJA OPERATING LLC,

              Defendants.

1:24-CV-12313-ADB

## MEMORANDUM IN SUPPORT OF
## SHARKNINJA'S MOTION TO STRIKE CLASS ALLEGATIONS

**<u>INTRODUCTION</u>**

In this product-liability action, Plaintiff Ali Zamani claims he cut his right hand while making a smoothie with a Ninja BL610 blender ("BL610"). As described in the Complaint, the BL610 is designed with a *removable* sharp blade assembly that extends the length of the pitcher. This design enables the BL610 to quickly and evenly process whole fruits, vegetables, and ice in seconds. The blade assembly is secured within the pitcher by the locking lid; the motor will not function unless the lid is properly on the pitcher and the lid handle is locked. Of relevance here, when the lid is off, the blade assembly is unsecured and able to be removed. Compl. ¶ 33.



The day of the incident (April 1, 2024) was not the first time Plaintiff had used his BL610. According to his Complaint, Plaintiff bought his BL610 from Amazon, and it was delivered on March 12, 2024. *Id*. ¶ 25. After the BL610 was unpackaged and assembled, Plaintiff used his BL610 for three weeks without any issues. *Id*. ¶ 27. On the day of the incident, Plaintiff blended a smoothie. After blending, he "removed the blender lid" and set it aside; then he "tilted the blender jar so that his smoothie could be poured." *Id*. ¶ 29. Because he had just removed the lid,

the "unsecured stacked blade assembly fell out of the blender while he poured out his smoothie," *id.* ¶¶ 26, 33, causing a laceration to his right hand, *id.* ¶¶ 29, 30.

On these allegations, Plaintiff's unfortunate incident—which involved pouring a smoothie with the lid removed and the blade assembly still inside the pitcher—would have been avoided if, during those three weeks, he had read and followed <u>any</u> of the multiple warnings that came with his BL610, starting with the following warnings on pages 1 and 11 of the **BL610 Owner's Guide**,[1] accessible from the Amazon webpage[2] where he bought his BL610:



Similar warnings and illustrations appear in the one-page **Quick Start Guide**[3] (also accessible from the Amazon BL610 webpage), which carries the following black-box safety information: "WARNING: Blades are sharp and not locked in place. Make sure lid is locked onto

---

[1] *See* BL610 Owner's Guide (attached to Complaint as ECF No. 1-2), which is also available by clicking the "User's Guide" hyperlink on the Amazon BL610 webpage. *See* Compl. ¶ 48. The Court may consider the Owner's Guide at the motion-to-dismiss stage because it is a document attached as an exhibit to the Complaint. *See Nollet v. Justs. of Trial Ct. of Com. of Mass.*, 83 F. Supp. 2d 204, 208 (D. Mass. 2000) ("When ruling on a 12(b)(6) motion to dismiss for failure to state a claim, the court may consider . . . documents attached as exhibits . . . in the complaint[.]").

[2] *See* Amazon BL610 webpage (attached to Complaint as ECF No. 1-1), which is also available at https://www.amazon.com/Ninja-Professional-Countertop-Technology-BL610/dp/B00NGV4506. The Court may consider the Amazon BL610 webpage because it is attached as an exhibit to the Complaint.

[3] *See* BL610 Quick Start Guide (attached to Complaint as ECF No. 1-2), which is also available by clicking the "User Manual" hyperlink on the Amazon BL610 webpage. *See* Compl. ¶ 48. The Court may consider the Quick Start Guide because it is attached as an exhibit to the Complaint.

the pitcher before pouring. If pouring without lid, ALWAYS remove blades first. Failure to do so

will result in a laceration risk."



Similar warnings and illustrations also appear in the one-page **Inspiration Guide**[4] (also

accessible from the Amazon BL610 webpage), which carries the following statement:

"WARNING: Stacked Blade Assembly is sharp and not locked in place. Make sure lid is locked

---

[4] *See* BL610 Inspiration Guide (attached to Complaint as ECF No. 1-2), which is also available by clicking the "User
Manual" hyperlink on the Amazon BL610 webpage.  *See* Compl. ¶ 48.  The Court may consider the Inspiration Guide
because it is attached as an exhibit to the Complaint.

onto the pitcher before pouring. If pouring without lid, carefully remove Stacked Blade Assembly first. Failure to do so will result in a risk of laceration."



Following delivery of his BL610, during the unpackaging and unboxing process, Plaintiff would have encountered additional relevant safety information. The **pitcher wrap** and **pitcher insert**[5]—which are packaging materials that the consumer must physically remove from the pitcher in order to gain access to the blade assembly—contain multiple, conspicuous, bold-print safety messages stating, "WARNING Contains loose, SHARP blades," as shown below:

---

[5] *See* Decl. of Matt Roberts ¶ 8 (ECF No. 10); Ex. 1 to the Decl. of Matt Roberts (ECF No. 10-1) at 23–25 (photos of pitcher wrap and pitcher insert). The Court may consider photos of the BL610 and its packaging and warnings because they are incorporated by reference in the Complaint. *See Nollet*, 83 F. Supp. 2d at 208 (When ruling on a 12(b)(6) motion to dismiss for failure to state a claim, the court may consider . . . documents … incorporated by reference in the complaint[.]"); *see, e.g.*, Compl. ¶¶ 15–16 (describing components of BL610 and including four photographs), ¶ 33 (describing design of BL610), ¶ 44–46 (including photograph of warnings on BL610 blender lid), ¶¶ 48–49, 52–55 (describing warnings contained in "Safety Information," "User Guide," and "User Manual" for BL610 on Amazon webpage).

The Court may also take judicial notice of such photos. *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1120 (S.D. Cal. 2021) ("Judicial notice is proper over websites and images of packaging in consumer protection advertising actions." (collecting cases)); *see also Lydon v. Local 103, Int'l Bhd. of Elec. Workers*, 770 F.3d 48, 53 (1st Cir. 2014) (permitting judge to consider matters susceptible to judicial notice at motion to dismiss stage); *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (noting court may consider "documents the authenticity of which are not disputed by the parties").



During the unboxing process, Plaintiff also would have encountered **printed copies of the BL610 Owner's Guide and Inspiration Guide.**[6]  These documents would have been the very first things he saw after opening the box.  Decl. of Matt Roberts ¶ 6 (ECF No. 10).  Like the Owner's Guide and Inspiration Guide available on the Amazon BL610 webpage, the printed Owner's Guide and Inspiration Guide provide numerous conspicuous warnings regarding the blade assembly, including that it is sharp, removable, and should be removed from the pitcher before pouring.  *See* Decl. of Matt Roberts ¶ 6 (ECF No. 10); Ex. 2 to the Decl. of Matt Roberts (ECF No. 10-2) and Ex. 3 to the Decl. of Matt Roberts (ECF No. 10-3).

During Plaintiff's "three weeks of use" (*see* Compl. ¶ 27) before the day of the incident, **Plaintiff's experience assembling and using his BL610** would have provided him actual or constructive notice regarding relevant hazards.  The Complaint includes detailed allegations regarding the "assembly" process for the BL610, along with photos showing what a consumer like Plaintiff would have observed when assembling the BL610 for use:

> When the blender is assembled for use by a consumer, the blade assembly is fit into (*not* locked into) a protruding piece of plastic on the bottom of the blender jar. The blender jar then locks into the base, which contains the controls for the blender. The lid then locks onto the top of the blender, and the blade assembly locks into the lid.

---

[6] *See* Decl. of Matt Roberts ¶ 6 (ECF No. 10); Ex. 2 to the Decl. of Matt Roberts (ECF No. 10-2) and Ex. 3 to the Decl. of Matt Roberts (ECF No. 10-3) (copies of BL610 Owner's Guide and Inspiration Guide corresponding to the date of manufacture of Plaintiff's BL610).  These materials may be considered by the Court because they are explicitly referenced in the Complaint, *see* Compl. ¶¶ 48–56, and are also subject to judicial notice as set out in footnote 5 *supra*.

> At no point in this process is the blade assembly secured to the main structure of
> the blender.

*See* Compl. ¶ 16.  The assembly process would have provided Plaintiff with actual or constructive

notice regarding relevant hazards, including that: 1) the blade assembly is sharp and not attached

to the bottom of the pitcher, 2) the lid is what secures the blade inside the pitcher, 3) it is important

to remove the blade assembly before pouring without the lid, and 4) if the blade were to fall out of

the pitcher, it could pose a risk of laceration.

Finally, each time Plaintiff used the BL610 before the incident, he encountered the

following **warning on the lid**, which starts with the word "WARNING" in bold immediately

followed by "Loose sharp blades" and an instruction to "carefully remove Stacked Blade Assembly

before pouring without lid."  Compl. ¶ 44.



Despite the foregoing <u>nine</u> sources of safety information regarding the stacked blade

assembly—online, in printed materials, on the product itself, and apparent through use of the

product—it is remarkable that Plaintiff is now claiming in this lawsuit that SharkNinja *fraudulently*

*concealed* from him the fact that the blades are sharp and not locked in place.  On this score,

Plaintiff's Class Action Complaint contains several product-liability claims and fraud-based

claims—based on Massachusetts' consumer-protection law, Massachusetts General Laws Chapter

93A ("Chapter 93A") (Count III), New York's consumer-protection law, New York General

Business Law § 349 ("§ 349") (Count IV), New York's false-advertising law, New York General Business Law § 350 ("§ 350") (Count V), and on common-law fraud (Count VI)—brought both individually and on behalf of a nationwide class comprising every person who "purchased" a Ninja blender with a stacked blade assembly like Plaintiff's BL610.  *See* Compl. ¶¶ 70, 111–44.

The Court should strike Plaintiff's class allegations.  To be sure, Plaintiff has avoided one major problem—i.e., that product-liability actions seeking recovery for personal injuries are ordinarily not appropriate for class treatment—by limiting his putative class action to economic-loss damages.  *See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 65–66 (S.D.N.Y. 2002).  But he hasn't avoided three others under Rule 23 that warrant striking the class allegations now.

*First*, Plaintiff's claims are not typical of the class and he is not an adequate class representative under Rule 23(a)(3) and (4).  Plaintiff, who brings personal-injury claims for himself alone, is in direct conflict with the interests of the putative class, whose personal-injury claims will be barred by res judicata in any future action.

*Second*, Plaintiff cannot certify a class under Rule 23(b)(3) because individualized questions of law and fact both predominate.  Individualized questions of law predominate because the putative class members cannot proceed collectively under Massachusetts General Law Chapter 93A and must instead bring their claims under the consumer-protection and fraud laws of their respective home states.  And individual questions of fact also predominate because Plaintiff will be unable to develop common evidence to prove the fraud-based claims on behalf of a class.

*Third*, Plaintiff does not have standing to pursue injunctive or declaratory relief under Rule 23(b)(2) or (b)(3) where, as here, the Complaint fails to allege any imminent threat of future injury.

Because no amount of class-wide discovery could rectify these legal deficiencies, the Court should strike the class allegations now.

<u>**LEGAL STANDARD**</u>

Rule 23(c)(1) of the Federal Rules of Civil Procedure states that "[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." Rule 23 also authorizes courts to "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D).

Rule 12(f) of the Federal Rules of Civil Procedure allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Where class allegations are challenged at the pleadings stage, the "dispositive question . . . is whether the complaint pleads the existence of a group of putative class members whose claims are susceptible of resolution on a classwide basis." *Rovinelli v. Trans World Ent. Corp.*, No. CV 19-11304-DPW, 2021 WL 752822, at *6 (D. Mass. Feb. 2, 2021) (quoting *Manning v. Bos. Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013)). District courts "retain 'considerable discretion' to strike material under Rule 12(f), and when 'it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis, district courts use their authority under [Rule 12(f)] to delete the complaint's class allegations." *Id.* (internal citations omitted); *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("[S]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim."). As Judge Woodlock observed in *Rovinelli*, this District has "demonstrated a willingness to grant motions to strike class allegations." 2021 WL 752822, at *6; *see also Crommelin v. Takeda Pharms. U.S.A., Inc.*, No. CV 24-10552-RGS, 2024 WL 4045730, at *4 (D. Mass. Sept. 4, 2024); *MSP Recovery Claims v. Plymouth Rock Assur. Corp., Inc.*, 404 F. Supp. 3d 470, 485 (D. Mass. 2019); *Monteferrante v. Williams-Sonoma, Inc.*, 241 F. Supp. 3d 264, 273 (D.

8

Mass. 2017); *Bearbones, Inc. v. Peerless Indem. Ins. Co.*, No. 3:15-30017-KAR, 2016 WL 5928799, at *9 (D. Mass. Oct. 11, 2016); *Camey v. Force Factor, LLC*, No. 14-cv-14717-RWZ, 2016 WL 10998440, at *2 (D. Mass. May 16, 2016); *Barrett v. Avco Fin. Servs. Mgmt. Co.*, 292 B.R. 1, 2 (D. Mass. 2003).

## ARGUMENT

### I. Plaintiff Cannot Satisfy Rule 23(a)(3)'s Typicality Requirement or Rule 23(a)(4)'s Adequacy Requirement.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The question, then, is whether the representative plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 393 (D. Mass. 2007). Rule 23(a)(4) in turn requires that "the representative parties will fairly and adequately protect the interests of the class." Two elements must be met to satisfy adequacy: "first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." *Henderson v. Bank of N.Y. Mellon*, 322 F.R.D. 432, 434 (D. Mass. 2017) (quoting *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)). Given the overlap between Rule 23(a)(3) and (4), these elements have "been found to merge." *DeRosa v. Mass. Bay Commuter Rail Co.*, 694 F. Supp. 2d 87, 100 (D. Mass. 2010); *see also Falcon*, 457 U.S. at 157 n.13 (noting that the typicality and adequacy requirements of Rule 23(a) "tend to merge").

It is clear from the Complaint that Plaintiff is neither typical of nor adequate for the putative class. For purposes of the putative class, Plaintiff seeks only to recover economic-loss damages for violations of Massachusetts's or all 50 states and the District of Columbia's consumer-

protection statutes and for common-law fraud. Compl. ¶¶ 70–71. Concurrently, Plaintiff asserts, on behalf of himself alone, claims for personal-injury damages for strict liability and negligence. *Id.* ¶¶ 1, 86–110. The upshot is that, by pleading both sets of claims together, he cannot dispute that (1) these claims arise from the same nucleus of operative facts, and (2) the putative class members' personal injury claims would be barred in any future lawsuit by res judicata. Plaintiff's interests squarely conflict with those of the class.

According to the Complaint, Plaintiff's individual claims and those of the class arise from the same nucleus of operative facts. *See* Compl. ¶¶ 86, 100, 111, 123, 130, 138. It is well-established that all damages arising from or relating to a single act, or the same transaction or occurrence, must be claimed and recovered in one action. *See Eisen & Carlise v. Jacquelin*, 417 U.S. 156, 173 (1974); *Mackintosh v. Chambers*, 285 Mass. 594, 596–97 (Mass. 1934) ("The statement of a different form of liability is not a different cause of action, provided it grows out of the same transaction, act, or agreement, and seeks redress for the same wrong."). Accordingly, the putative class members with personal-injury claims must bring their claims now or not at all. *See Reppert v. Marvin Lumber & Cedar Co.*, 359 F.3d 53, 57 (1st Cir. 2004) (class settlement under 50 states' consumer protection laws precluded class members' subsequent individual actions for additional damages allegedly caused by the same product); *In re Fosamax Prods. Liab. Litig.,* 248 F.R.D. 389, 401 (S.D.N.Y. 2008) ("Res judicata may preclude class members from later litigating personal injury claims that could have been brought in the earlier action.").

As such, Plaintiff has traded one problem for another. A class action asserting personal injury claims could not be certified, and Plaintiff does not attempt to do so. *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. at 65–66 ("[A]ll relevant Court of Appeals and the bulk of relevant district court decisions have rejected class certification in products liability cases."); *see also* 1

McLaughlin on Class Actions § 5:41 (19th ed.) (collecting cases). But Plaintiff's "personal injury for me but not for thee" approach to the putative class fares no better as it will bar those claims for the putative class. This risk isn't hypothetical. According to the Complaint, "[t]he poorly designed unsecured stacked blade assembly of the Ninja blender causes risk of injury and laceration," and SharkNinja is "aware that many consumers have already been injured." Compl. ¶¶ 23–24. The Complaint identifies "53 reports of lacerations caused by the stacked blade assembly falling out of the pitcher when consumers inverted or tipped the pitcher after removing the lid with the blade assembly still inside." *Id.* ¶ 37. And the Complaint further highlights reviews from users who have injured themselves while using the BL610. *See id.* ¶ 39 ("I have injured myself TWICE now using this blender."); *id.* ("[S]eriously cut myself when trying to remove the blades to clean blender."); *id.* at ¶ 41 ("[M]ultiple people have experienced laceration and injury due to the Product's design defect.").

By claim-splitting the putative class members' personal injury claims, while, in turn, pursuing his own personal injury claims individually, Plaintiff is neither typical of nor adequate for the putative class. *See, e.g.*, *Thompson v. Am. Tobacco Co.*, 189 F.R.D. 544, 551 (D. Minn. 1999) (representatives who have "tailored the class claim in an effort to improve" possibility of class certification gain "essentially a cosmetic benefit" at significant risk to the class, and "[t]he possible prejudice to class members is simply too great for the Court to conclude that the named Plaintiff's interests are aligned with those of the class.").

## II. Plaintiff Cannot Satisfy the More Demanding Rule 23(b)(3) Predominance Requirement.

Rule 23(b)(3) requires "the court find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the

controversy." This factor "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representative action." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594 (1997).

Even at this stage, Plaintiff's proposed nationwide class does not—and cannot—satisfy Rule 23(b)(3). Massachusetts General Law Chapter 93A cannot apply to every putative class member under Massachusetts choice-of-law principles. Instead, the consumer-protection statutes and fraud laws of the 50 states and the District of Columbia apply, and the individualized differences among these laws predominate over any alleged common issues. Further compounding the issue is Plaintiff's inability to prove any of these fraud claims with common proof. Whether consumers actually believe that a "blender with unsecured blades is less valuable than one with secured blades," Compl. ¶ 62, is a highly individualized question of fact—a point amply illustrated by the consumer reviews that the Complaint incorporates by reference.

## A.    Individual Questions of Law Will Predominate.

### 1.    A nationwide Chapter 93A class cannot be certified.

The Court should strike the allegations concerning a nationwide class under Chapter 93A because Massachusetts lacks the necessary contacts to apply its law to out-of-state purchasers. "Although Section 9 of the Massachusetts Consumer Protection Act has no textual constraints on its application, Massachusetts choice-of-law principles are not so unlimited." *Camey*, 2016 WL 10998440, at *3. And because "state . . . consumer protection . . . laws vary on such issues as prohibited practices and limitations periods, this Court must determine if [the state whose law the plaintiff seeks to apply to the nationwide class] has a significant contact or significant aggregation of contacts to this litigation that would justify the application of its law over the various laws of other states." *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 276–77 (D. Mass. 2004).

As this District has recognized, including at the motion to strike stage, this analysis precludes the application of Chapter 93A to out-of-state purchasers. *See Camey*, 2016 WL 10998440, at *3 (granting motion to strike application of Massachusetts's consumer protection law to nationwide class and explaining "[Massachusetts's choice-of-law] principles have generated an unbroken string of opinions in which the federal courts have refused to allow multi-state classes to pursue claims under the Massachusetts Consumer Protection Act"); *S. States Police Benev. Ass'n, Inc. v. First Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 93 (D. Mass. 2007) ("[B]ecause state consumer protection laws are intended to protect consumers, the Court concludes that the laws of the home states will govern here.").

So too here. Massachusetts follows the Restatement (Second) of Conflict of Laws to determine choice-of-law issues. *See Camey*, 2016 WL 10998440, at *3 (citing *Bushkin Assocs., Inc. v. Raytheon Co.*, 473 N.E.2d 662, 670 (Mass. 1985)). A plaintiff alleging fraud or misrepresentation invokes Section 148 of the Restatement, which focuses on where a plaintiff relied on a defendant's alleged misrepresentation to determine which state's law will apply. *Id.* Here, Plaintiff alleges that "at all relevant times" he was a "resident and citizen of . . . New York," which presumably includes when he "ordered a SharkNinja blender." Compl. ¶¶ 6–7. And, as in *Camey*, "the only plausible reading of the complaint's class allegations is that the putative nationwide class members purchased [Ninja blenders] in their home states." *See Camey*, 2016 WL 10998440, at *3; *see also* Compl. ¶ 69 ("All persons . . . who purchased the Products in the United States[.]"). Because those states, not Massachusetts, are the sites of the putative class members' exposure to SharkNinja's alleged omissions, the Court should strike the nationwide class allegations under Chapter 93A.

## 2. A nationwide consumer-protection and common-law fraud class cannot be certified.

Plaintiff alternatively brings his fraud-based claims individually under New York law and brings the claims of the putative class members "under the consumer protection laws of each state (including the District of Columbia) in which any Class member resides." Compl. ¶ 71. Plaintiff also asserts a class claim for "common law fraud," although the Complaint does not specify which jurisdiction's law(s) would apply to this claim. *Id.* ¶¶ 138–44.

These allegations fare no better because the variations among consumer-protection statutes and common-law fraud claims are not amenable to class treatment. As to consumer-protection statutes, this District has recognized, "[c]ourts have been particularly unwilling to certify classes under the laws of multiple states in cases involving state consumer-protection laws on the grounds that those laws vary widely state to state[.]" *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 291 F.R.D. 13, 19 (D. Mass. 2013); *see also Faherty v. CVS Pharmacy, Inc.*, No. 09-CV-12102, 2011 WL 810178, at *5 (D. Mass. Mar. 9, 2011); *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 147 (S.D.N.Y. 2008) (noting that "[m]ost of the courts that have addressed the issue have determined that consumer-fraud . . . laws in the fifty states differ in relevant respects"). In surveying the various consumer-protection statutes across the country, the court in *In re Grand Theft Auto* identified at least five material differences:

> (1) some states require a showing of **reliance** to state a claim for consumer fraud, while others do not;
>
> (2) some states require no **proof of scienter** to make out a claim for consumer fraud, while those requiring proof of scienter vary as to the level of proof demanded;
>
> (3) some states require **proof of an ascertainable monetary loss** to succeed on a claim for consumer fraud, while at least one requires no such proof;
>
> (4) some states bar **the maintenance of consumer-fraud class actions**, while others expressly provide for class-action litigation;

(5) some states impose **special notification requirements** on consumer-fraud actions, while others do not[.]

*Id.* at 147 n.8 (reformatted and emphasis added).

There's more. The Complaint alleges that "[q]uestions of law and fact common to all Class members include . . . [w]hether Defendants' conduct rises to the level of reprehensibility under applicable law such that the imposition of punitive damages is necessary and appropriate[.]" Compl. ¶ 79. But this issue of **punitive damages** is not common. Some states (e.g., Connecticut, Illinois, Missouri) permit the recovery of punitive damages for consumer-protection claims.[7] Some states (e.g., Florida, Maryland, Maine) do not.[8] Simply put, "a determination of punitive damages is based on **individual** issues . . . from the procedures utilized to impose punitive damages, to the conduct and proof necessary for the recovery of punitive damages." *In re Baycol Prods. Litig.*, 218 F.R.D. 197, 215 (D. Minn. 2003) (emphasis added).

The same issues are manifest for Plaintiff's common-law fraud claim. When fraud claims are governed by the laws of the jurisdiction where each putative class member purchased the product, a nationwide class cannot be certified. *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 291 F.R.D. at 19 (differences in "fraud laws in the plaintiffs' home states" made "clear that in this case the inherent difficulties far outweigh the potential benefits of a nationwide class action"); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002) ("[S]tate laws

---

[7] Conn. Gen. Stat. § 42-110g ("The court may, in its discretion, award punitive damages and may provide such equitable relief as it deems necessary or proper."); *Turner v. GAC Star Quality, LLC*, 671 F. Supp. 3d 897, 902 n.2 (N.D. Ill. 2023) (noting the availability of punitive damages under the Illinois Consumer Fraud and Deceptive Business Practices Act (citing 815 Ill. Comp. Stat. Ann. 505/10a)); *Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410, 414 (Mo. 2014) (noting the availability of punitive damages under the Missouri Merchandising Practices Act).

[8] Fla. Stat. Ann. § 501.211 (consumer "may recover actual damages, plus attorney's fees and court costs" under Florida's Unfair and Deceptive Trade Practices Act); Me. Rev. Stat. Ann. tit. 5, § 213(1) (consumer may recover "actual damages, restitution and . . . such other equitable relief, including an injunction, as the court determines to be necessary and proper" under Unfair Trade Practices Act); Md. Code Ann., Com. Law § 13-408 (consumer may recover "for injury or loss sustained by him" and "reasonable attorney's fees" under Maryland's Consumer Protection Act).

about theories . . . differ, and such differences have led us to hold that other warranty, fraud, or products-liability suits may not proceed as nationwide classes."); *Darisse v. Nest Labs, Inc.*, No. 5:14-CV-01363-BLF, 2016 WL 4385849, at *13 (N.D. Cal. Aug. 15, 2016) ("Material variations . . . exist among the states' laws regarding common law fraud.").

The court in *Darisse* identified the material difference that would preclude certification of a nationwide common-law fraud class, which are equally applicable here. What level of **reliance or proof of causation** varies from jurisdiction to jurisdiction. *Id.* (comparing California, which requires justifiable reliable but may permit an inference of reliance in class actions vs. Delaware and Florida, which do not allow reliance to be inferred in class actions vs. Arizona, Iowa, Mississippi, Missouri, Montana, New York, Oklahoma, Virginia, and Wyoming, which all require actual reliance). The **burden of proof** also varies. *Id.* (comparing California, which uses a preponderance of the evidence standard vs. 21 states, which use a clear and convincing evidence standard). And the applicable **statute of limitations** is yet another variable. *Id.* at *14 (comparing California, which has a three-year statute vs. Alabama, Kansas, Montana, Oklahoma, Oregon, and Pennsylvania, which have two-year statutes vs. Louisiana, which has a one-year statute). These differences are central to the issue of whether any individual class member could maintain a common-law fraud claim. And, because these individualized legal issue predominate over common legal issues, this common-law fraud claim cannot proceed as a class.

The Court should strike these allegations now. No amount of discovery will change the fact that a nationwide class predicated on the consumer-protection and common-law fraud laws of the 50 states and the District of Columbia cannot satisfy Rule 23(b)(3) at any stage of the litigation. The Sixth Circuit recognized as much in *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943

(6th Cir. 2011). In affirming the grant of the defendant's motion to strike class allegations premised on the consumer-protection laws of numerous states, the Sixth Circuit explained,

> The problem for the plaintiffs is that we cannot see how discovery or for that matter more time would have helped them. To this day, they do not explain what type of discovery or what type of factual development would alter the central defect in this class claim. **The key reality remains: Their claims are governed by different States' [consumer-protection] laws, a largely legal determination, and no proffered or potential factual development offers any hope of altering that conclusion, one that generally will preclude class certification.**

*Id.* at 949 (emphasis added). The First Circuit, in turn, has cited *Pilgrim* with approval for the proposition that "[i]f it is obvious from the pleadings that the proceeding cannot possibly move forward on a class-wide basis, district courts use their authority under Federal Rule of Civil Procedure 12(f) to delete the complaint's class allegations." *Manning*, 725 F.3d at 59. Such is this case here, and these allegations should be stricken now. *See Crommelin*, 2024 WL 4045730, at *4 (D. Mass. Sept. 4, 2024) (finding "no reason to delay resolution of the issue" and striking the plaintiff's class allegations where "significant variations among state warranty laws [would] preclude the establishment of any viable class").

### B. Individualized Issues of Fact Will Predominate.

In addition to the material difference in the consumer-protection and common-law fraud laws that would govern the putative class members' claims, the Complaint introduces issues of individualized fact that, even at this stage in the litigation, foreclose the possibility of class adjudication. As the Supreme Court has explained, "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. *Wal-Mart*

*Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). To that end, "[d]issimilarties within the proposed class are what have the potential to impede the generation of common answers." *Id.*

Here, Plaintiff proposes the following class in the Complaint:

> All persons or entities who purchased the Products in the United States during the applicable limitations period, and/or such subclasses as the Court may deem appropriate[.]

Compl. ¶ 69. These class members, Plaintiff alleges, "are victims of deceptive marketing that has led to their purchase of a Product with less value than they were led to believe," *id.* ¶ 60, which is premised primarily on Plaintiff's individual experience of purchasing a Ninja blender on Amazon, *see id.* ¶¶ 60–68. And while Plaintiff refers to "common" questions—e.g., whether SharkNinja misrepresented or omitted safety information of the products; whether SharkNinja's advertising was false; and whether class members sustained injuries as a result of SharkNinja's false advertising, and, if so, whether class members are entitled to equitable relief and/or punitive damages—those questions can only be *answered* by way of individualized proof specific to each putative class member. *Id.* ¶ 79.

Here's why. As shown below, some consumers have publicly stated that they prefer their Ninja blenders over traditional blenders with secured blades, including the specific brands identified in Plaintiff's Complaint[9]—making it impossible for Plaintiff to pursue a theory of liability that would require proof that 100% of class members believed that a "blender with unsecured blades is less valuable than one with secured blades" or that 100% of class members are "victims of deceptive marketing" based solely on evidence that a class member purchased a Ninja

---

[9] The Court may consider the consumer reviews identified by SharkNinja because they are incorporated by reference in the Complaint. *See* footnote 5 *supra*. The Complaint includes links to these other blender products, which include the reviews identified below. *See* Compl. ¶ 34 n.3 (link to Aietto brand), ¶ 35 n.4 (link to UneedMe brand), ¶ 35 n.5 (link to Nutribullet brand), ¶ 36 n.6 (links to Hamilton Beach, OMMO, and Sangcon brands).

blender, regardless of whether any class member's awareness of or preference for the design of the Ninja blender, including its blade assembly:

Regarding the **Aeittto**—a purportedly "safer" blender whose "blades are attached to the bottom of the blender," *see* Compl. ¶ 34—at least two Amazon customers who bought the Aeitto stated that they wished they would have bought a Ninja blender instead, noting that the Ninja blender is "fabulous" and "tears through frozen strawberries even with a full pitcher," while the Aeitto is "not user friendly" and "not near as good as Ninja with the tall blade stem that goes up thought the middle of the blender pitcher":



Additional reviews for other blenders cited in the Complaint are in accord.  The **UneedMe** blender, *see* Compl. ¶ 35, has similar Amazon consumer reviews, with one disappointed UneedMe consumer stating she is "[g]oing back to Ninja."  The **Hamilton Beach** blender, *see* Compl. ¶ 36, also has similar Amazon consumer reviews, with one frustrated Hamilton Beach consumer complaining about having to "consistently stop and stir" and advising fellow Amazon consumers to "just get a Ninja."  The **Sangcon** blender, *see* Compl. ¶ 36, has predominately negative Amazon reviews, most complaining about low quality and poor performance; none mention any Ninja

product.  And the **OMMO** blender, *see* Compl. ¶ 36, has an Amazon consumer review favoring the Ninja blade design over the OMMO's.[10]

Taken together, when considering the differences among the applicable laws of the 50 states and the District of Columbia and the highly individualized questions of fact that proving these claims would necessitate, the Court can conclude, as a matter of law, that individual questions of law and fact predominate and that Plaintiff's class allegations should be stricken. [11]

## III. Plaintiff Does Not Have Standing to Pursue Injunctive or Declaratory Relief Under Rule 23(b)(2) or (b)(3).

The Complaint also seeks injunctive relief under Rule 23(b)(2) and Rule 23(b)(3), Compl. ¶¶ 82–83, as well as declaratory relief, presumably under Rule 23(b)(2), *id.* ¶ 85.  "Standing for injunctive relief depends on 'whether [the plaintiff is] likely to suffer future injury . . . .'"  *In re Evenflo Co., Inc., Mktg., Sales Pracs. & Prods. Liab. Litig.*, 54 F.4th 28, 41 (1st Cir. 2022) (citation omitted).  Plaintiff's allegations concern his past purchasing behavior, as opposed to any allegation that he would rely on SharkNinja's advertising or purchase a Ninja blender in the future.  *See, e.g.*, Compl. ¶ 68.  Because Plaintiff does not allege that he is likely to suffer future injury, the Court should strike Plaintiff's requests for injunctive and declaratory relief.

## CONCLUSION

For these reasons, SharkNinja requests the Court grant SharkNinja's Motion to Strike Class Allegations.

---

[10] The NutriBullet "NBJ50200 model" referenced in the Complaint, *see* Compl. ¶ 35, is not a blender; it's a juicer (specifically, a "NutriBullet Centrifugal Juicer Pro NBJ50200," according to the BestBuy webpage referenced in the Complaint, *see id.* ¶ 35 n.5), and its blade assembly looks nothing like a blender or food-processor blade assembly.

[11] Should Plaintiff assert that the Court can certify state sub-classes, this argument would also fail because Plaintiff lacks standing to assert those claims on behalf of nationwide class members.  *See, e.g.*, *Morales Posada v. Cultural Care, Inc.*, 554 F. Supp. 3d 309, 324 (D. Mass. 2021) ("[T]he allegations here are insufficient to allow the named Plaintiffs to bring the claims on their own behalf under Connecticut or Washington consumer protection law or to establish standing for unnamed plaintiffs from Connecticut and Washington for claims under those state laws.").

Dated: November 12, 2024
Respectfully submitted,

/s/ Thomas J. Sullivan
Thomas J. Sullivan (BBO# 625030)
SHOOK, HARDY & BACON L.L.P.
One Federal Street, Suite 2540
Boston, MA 02110
Telephone: (617) 531-1411
Facsimile: (617) 531-1602
tsullivan@shb.com

*Attorney for Defendants SharkNinja, Inc.
and SharkNinja Operating LLC*

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent

electronically to the registered participants as identified on the NEF and paper copies will be sent

to those indicated as non-registered participants on November 12, 2024.

/s/ Thomas J. Sullivan
Thomas J. Sullivan